# WOODROW WILSON *v.* STATE OF MARYLAND

[No. 282, Initial Term, 1967.]

*Decided October 16, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and PRETTYMAN, J., Associate Judge of the First Judicial Circuit, specially assigned.

*Joseph H. Thomas, Jr.* for appellant.

212

*Dickee M. Howard, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *A. Samuel Peregoff, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The Appellant, Woodrow Wilson, was convicted of robbery with a deadly weapon by Judge George L. Russell, Jr., sitting without a jury, in the Criminal Court of Baltimore on August 10, 1966. After his motion for a new trial had been denied, he was sentenced to fifteen years in the Maryland Penitentiary. His previous conviction for the same offense had been set aside on the basis of *Schowgurow.*

At approximately 11:15 a.m., on December 4, 1964, according to the record, four men entered a cafe; two had drawn pistols and the third wielded a shotgun with a star on the stock. The owner and patrons were forced to lie on the floor while the armed men proceeded to rob the establishment of some $3,400.

The owner of the cafe was unable to identify Wilson as one of the robbers. The owner's brother, who was an employee, testified that, as he arrived at the establishment to begin his day's work, he saw a man jump out of a 1955 or 1956 green and white Chevrolet and run into the cafe, but he could not say it was Wilson. He did, however, identify a picture of Wilson's car as the green and white Chevrolet he had observed at the scene. A police officer testified that as he and another officer were responding to the reported "holdup" in a cruise car, he observed a green and white Chevrolet occupied by five men proceeding at a rapid speed in the opposite direction which fitted the description given in the robbery report. The officers made a U-turn and gave chase but lost sight of the car after it had gone through a red light. After cruising the area for a few minutes, they discovered the car on a vacant lot, unoccupied. They looked in and saw a shotgun with a star on the stock lying on the rear floor. One of the police officers radioed Headquarters to detain for investigation anyone who reported this car as stolen. Within five or six minutes the police received

a report from Wilson that his car had been stolen and within an hour Wilson, who was identified by the officer as the driver of the car, was arrested, questioned and then released. Approximately six weeks later, Wilson was apprehended again on the basis of an arrest warrant.

In this appeal he contends that his conviction rests on the uncorroborated testimony of an accomplice, who was convicted as a participant in the same holdup. However, he had not been sentenced at the time he testified at Wilson's trial to the effect that Wilson owned and drove the holdup car and was one of the principal participants.

It is, of course, elementary that an accused may not be convicted of a crime upon the uncorroborated testimony of an accomplice. *Watson v. State,* 208 Md. 210; *Basoff v. State,* 208 Md. 643. However, as was said by the Court of Appeals of Maryland in *Boggs v. State,* 228 Md. 168, 171, "it is well settled that not much in the way of corroboration of the testimony of an accomplice is required. It is not necessary that the corroborating testimony be, of itself, sufficient to convict the accused but only that it support some of the material points of the accomplice's testimony." See also *McKenzie v. State,* 236 Md. 597; *Booth v. State,* 229 Md. 528; *Jefferson v. State,* 228 Md. 331. The lower court found, and we agree, that there was ample corroboration. The brother of the holdup victim saw a green and white Chevrolet at the scene, which was later identified as belonging to Wilson; the police pursued Wilson's car from the scene and found therein a shotgun with a star on the stock, which the robbery victim testified had been used in the holdup. The police officer at the trial positively identified Wilson as the driver of the getaway car which he pursued. There was sufficient corroboration of the accomplice's testimony to sustain the conviction.

The trial judge was not required to believe Wilson's alibi that while getting a haircut between 11:00 and 11:30 a.m. on the day of the crime his car was stolen, or the testimony of his alibi witness that Wilson spent fifteen or twenty minutes with her shortly after noon on the same day. *Holtz v. State,* 1 Md. App. 358; *Chittum v. State,* 1 Md. App. 205, 209; *Logan v. State,* 1 Md. App. 213, 216.

The Appellant also contends that his motion to suppress the evidence should have been granted. He argues that his first arrest was illegal since he was released immediately thereafter and, accordingly, the articles taken from his car were illegally seized without a search warrant and therefore inadmissible at his trial.

The first arrest was not illegal since the arresting officer had probable cause, as a result of the reported robbery, to believe that a felony had been committed, and ample probable cause to believe that Wilson had committed the felony since the officer pursued Wilson's car fleeing from the robbery scene. *Hopkins and Terry v. State*, 239 Md. 517, 520; *Johnson v. State*, 238 Md. 528, 539; *Mercer v. State*, 237 Md. 479, 482. The fact that the officer made a determination to release Wilson after his first arrest does not alter the fact that there was probable cause for the arrest. The legality of an arrest is measured by the existence of probable cause at the time thereof, not by subsequent events which may lead to the release of the person arrested from police custody either immediately or ultimately.

It is clear, however, that the warrantless seizure of the shotgun offered into evidence was not incident to the arrest and cannot be sustained as incidental thereto, even though the arrest was lawful, for "a search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest. *Agnello v. United States*, 269 U. S. 20." See also *Stoner v. California*, 376 U. S. 483; *Preston v. United States*, 376 U. S. 364. Here, the arrest was not in the immediate vicinity of the car and was effected nearly an hour after the search and seizure.

We are of the opinion, nevertheless, that the seizure of the shotgun without a warrant was, under the circumstances, lawful. It is apparent that the seizure in this instance does not fit neatly into any of the several categories or exceptions which have been carved out of the Fourth Amendment prohibition against searches and seizures without a warrant. However, as this Court said in *St. Clair v. State*, 1 Md. App. 605, at page 617:

"* * * the relevant test is whether the search was reasonable under all of the circumstances, for it is only

unreasonable searches that are prohibited by the Fourth Amendment. *Carroll v. United States,* 267 U. S. 132 (1925); *Stewart v. State,* 1 Md. App. 309 (1967). And that which is reasonable cannot be determined by any fixed formula, *United States v. Rabinowitz, supra,* nor can it be stated in rigid and absolute terms, *Harris v. United States,* 331 U. S. 145 (1947). In short, whether a search and seizure is reasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case."

That the police officers had reason to conclude that the shotgun which they observed in plain view on the floor of the getaway car had been used in the commission of the robbery cannot be seriously disputed. Indeed, the officers, while in hot pursuit of the getaway car had lost contact with it only momentarily. When they relocated it the ignition switch was still on and the engine still warm. Whether we consider the action of the police in taking the gun from the car at that time a search in the Constitutional sense, or not (the gun being in view), we hold that where, as here, police are in immediate, high speed chase of criminals who are fleeing from an armed robbery in a motor vehicle, from which vehicle they subsequently flee, the police may, without offending against the Fourth Amendment, take into custody without a warrant that which is an obvious weapon used in the crime and which appears in plain view within the vehicle.[1] We place our decision squarely upon the proposition that under the facts and circumstances of this case seizure of the shotgun was not violative of the Appellant's Fourth Amendment rights; or, as stated in *St. Clair, supra,* in measuring the action of the police in this case against "the rule that a search, to be reasonable, must rest upon a search warrant, the ultimate test, as we see it, is whether the search was 'other-

---

1. While it may be argued that a guard could have been stationed at the car while a search warrant was obtained, there was no assurance that in the interim, Wilson would not have sent an agent to retrieve the car. The test is the reasonableness of the search, and not whether it was reasonable to obtain a search warrant. *United States v. Rabinowitz,* 339 U. S. 56, 66.

216

wise reasonable.'" See *United States v. Rabinowitz, supra,* at p. 64.

The Appellant's contention that his second trial placed him in double jeopardy is without merit. His first conviction had been set aside as a result of the holding in *Schowgurow v. State,* 240 Md. 121, and we have consistently held that in such cases the second trial and conviction do not constitute double jeopardy. *Sadler v. State,* 1 Md. App. 383; *Tate v. State,* 236 Md. 312.

The Appellant finally contends that he was indicted by an unconstitutionally constituted Grand Jury because the method used in Baltimore City for the selection of the Grand Jury was discriminatory against Negroes. This issue was not raised below, Maryland Rules 725(b) and 1085, and, in any event, is groundless since unsupported in the record.

*Judgment affirmed.*