WILLIAM FRANCIS REAGAN *v.* STATE
OF MARYLAND

[No. 282, September Term, 1967.]

*Decided July 25, 1968.*

The cause was argued before MURPHY, C. J., and MORTON, ORTH, and THOMPSON, JJ.

*Orie Seltzer,* with whom were *Theodore E. Breault* and *Herbert P. Suskind* on the brief, for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *John R. Miles, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant was found guilty by a jury in the Circuit Court for Prince George's County of housebreaking and grand larceny, being the first and second counts respectively of the indictment under which he was charged. Concurrent sentences of 10

years on the first count and 15 years on the second count were imposed "to run consecutively with any sentence previously imposed by any Court of competent jurisdiction."

## THE INDICTMENT

The first count of the indictment charged that the appellant "* * * the dwelling house of one Gaston Paul Jennett and Sheila Jennett * * * feloniously did break with intent to commit a certain felony there and therein, to wit: with intent then and there certain goods and chattels in the said dwelling house then and there being found, then and there feloniously to steal, take and carry away, contrary to the form of the Statute in such case made and provided, and against the peace, government and dignity of the State." The appellant contends that the lower court erred in denying the motions for judgment of acquittal "with regard to the defect in the first count of the indictment in that the said indictment failed to charge an essential element of the offense of housebreaking, namely, that the breaking was *in the daytime*". The question is whether the first count of the indictment sufficiently stated an offense so as to permit the sustaining of the conviction under it.[1]

---

1. At the trial below the appellant raised the question in argument on the motions for judgment of acquittal. Defenses and objections based on defects in the indictment, other than that it fails to show jurisdiction in the court or to charge an offense, must be raised by motion before trial and failure to do so shall constitute a waiver. However, lack of jurisdiction or the failure of the indictment to charge an offense shall be noticed by the lower court at anytime during the proceedings. Md. Rules, 725b. Also it is at least open to question whether a court exercising criminal jurisdiction has power to make a finding of guilt or to impose a sentence under an indictment which charges no offense. See *Putnam v. State*, 234 Md. 537, note 1 at 540-541. We shall consider the question as properly before us.

The question whether, by the failure to charge the breaking was in the daytime, there was omitted in the indictment an essential element of the offense intended to be charged, thus rendering the indictment defective, was before the Court of Appeals in *Kares v. State*, 215 Md. 396, but not reached as not tried and decided below. The question was noted by this Court in *Reagan v. State*, 2 Md. App. 262, note 4, 269, but, as it was not raised, it was not decided.

Under the common law, the felony of burglary was the breaking and entering of a dwelling house of another by night with the intent to commit a felony. *Clark and Marshall,* Law of Crimes (6th Ed.) § 13.00 p. 870. It is a felony in Maryland, *Maryland Declaration of Rights,* Art. 5, and although the penalty for its commission is fixed by statute, the crime of burglary is not defined therein, Md. Code, (1967 Repl. Vol.) Art. 27, § 29. See *McGraw v. State,* 234 Md. 273, 275; *Hannah v. State,* 3 Md. App. 325. So if the breaking and entering of the dwelling house at night is with the intent to steal personal goods of another under the value of $100 the offense is not common law burglary, for the larceny of goods under the value of $100 is designated a misdemeanor by Code, Art. 27, § 341. But by legislative enactment the felony of burglary includes the breaking and entering of "any dwelling house in the nighttime with the intent to steal, take or carry away the personal goods of another of any value therefrom," Code, Art. 27, § 30(a), and the maximum penalty of 20 years established by § 29 is for both the statutory burglary and common law burglary. In Maryland neither common law burglary nor statutory burglary encompasses the breaking of a dwelling house in the daytime. This gap was filled by legislative enactment. By Code, Art. 27, § 30(b) there is proscribed the felony "of breaking a dwelling house in the daytime with intent to commit murder or felony therein, or with intent to steal, take or carry away the personal goods of another of any value therefrom" and a maximum penalty of 10 years therefor is authorized.[2] Thus although not designated as burglary, the offense proscribed by § 30(b) includes the essential elements of both burglary and statutory burglary with two exceptions: (1) the breaking need not be in the nighttime,[3] and (2) merely a breaking is required rather than a breaking and entering. And while a person convicted of common law and statutory burglary must restore the thing taken to the owner thereof or pay him the full value thereof under the

---

**2.** Prior to the amendment of 1965 the offense was included in § 32 and was a misdemeanor.

**3.** For a discussion of what is daytime and what is nighttime see *Wiggins v. State,* 4 Md. App. 95, footnote 9.

provisions of § 29, no such requirement is provided by § 30(b) upon the conviction of daytime housebreaking. It is clear, therefore, that in Maryland there are three separate felonies under which the breaking of a dwelling house is proscribed—common law burglary, statutory burglary and daytime housebreaking. Under the provisions of Code, Art. 27, § 31 in any indictment for the crime of burglary it is sufficient to use a formula substantially to the effect: "that A-B on the ...... day of ...., 19.., in the County (City) aforesaid feloniously committed burglary of the dwelling of C-D; * * *." This formula is sufficient to charge both common law burglary and the statutory burglary under § 30(a) but no formula is provided by statute for daytime housebreaking under § 30(b).

> "The rule which seems to be generally recognized draws a line of demarcation between an indictment or information which completely fails to state an offense and one which alleges all the elements of the offense intended to be charged and apprises the accused of the nature and cause of the accusation against him, even though it is defective in its allegations or is so inartificially drawn that it would have been open to attack in the trial court." *Putnam v. State,* 234 Md. 537, 541.

In our view the indictment in the instant case does charge an offense, as it alleges all the elements of the crime proscribed by § 30(a)—the breaking of a dwelling house with intent to steal. We think that the time of the offense, "in the daytime", is not an essential element of the crime, and is not used in the statute to define or characterize the offense, but merely to distinguish it from burglary which must be committed in the nighttime. We find support in our view in the rationale of *St. Clair v. State,* 1 Md. App. 605 and *Gazaille v. State,* 2 Md. App. 462 where we held that lack of sufficient proof that the breaking occurred in the daytime as opposed to the nighttime did not require reversal of a judgment upon conviction of a charge of daytime housebreaking as we felt that when the proof fails to show the time of the offense, then the accused may be punished under the statute providing the lesser penalty. 1 Md. App.

622. As it is not necessary to prove that the offense occurred in the daytime, it is not necessary to allege that fact. And the omission of an allegation that it did so occur is neither a matter of substance, precluding its addition by amendment, Md. Rules, 714a; *Corbin v. State,* 237 Md. 486; *Watkins v. State,* 4 Md. App. 47, nor an essential element or fact "constituting the specific offense," Md. Rules, 712a.

The appellant cites no authorities which support his contention. We find further support for our view in cases in other jurisdictions.[4] In *State v. Baker,* 92 Utah 567, 70 P. 2d 733, 734 (1937) the court said:

"Certainly, the weight of authority—practically all the authority—is to the effect that an indictment for burglary in the daytime is good without expressly alleging that it was in the daytime."

In *State v. Eubanks,* 77 Id. 443, 294 P. 2d 273 (1956) it was held that the state was required to allege and prove the time of day for conviction of nighttime burglary and that a charge which does not allege the time of day charges only daytime burglary. In *State v. Newell,* 93 Vt. 81, 106 A. 561 (1919) it was held that it was not necessary to include "daytime" in an indictment for a lesser burglary offense, although it was necessary to include "nighttime" in an indictment for the greater offense. *State v. Neddo,* 92 Me. 71, 42 A. 253 (1898) and *Carr v. Lanagan,* 50 F. Supp. 41 (Dist. Ct. Mass. 1943) are to like effect. Compare *In Re Rhyndress,* 317 Mich. 21, 26 N. W. 2d 581 (1947)

Of course, an indictment must be sufficiently definite so as to inform the accused of the charge against him, to enable him to prepare his defense and to protect him against subsequent prosecutions for the same offense. *Lynch v. State,* 2 Md. App. 546, 562. The indictment here fulfilled these requirements. Under its charge the only offense of which the appellant could have

---

4. We note that in *Kares v. State,* 215 Md. 396, although the question was not reached, the Court said, page 397, "The appellant concedes that according to 'the weight of authority * * * an indictment for burglary in the daytime is good without expressly alleging that it was in the daytime'".

been properly convicted was daytime housebreaking. A conviction of burglary cannot be sustained without proof that the offense occurred in the nighttime, *Bright v. State,* 4 Md. App. 154, and the charge must so allege.[5] Further the indictment here alleged only a "breaking" in accordance with the provisions of Code, Art. 27, § 30(b), and not an "entering" which is an essential element of both common law and statutory burglary, Art. 27, § 30(a). We find nothing to indicate that the appellant was misled as to the charge against him or that he was actually prejudiced by the form of the indictment. We have found that the indictment did not "completely fail to state an offense." But even though it alleged "all the elements of the offense intended to be charged" and apprised the appellant "of the nature and cause of the accusation against him", if the appellant thought it was defective in its allegations or "so inartificially drawn that it would have been open to attack in the trial court," he could have challenged its sufficiency by an appropriate motion under Maryland Rule, 725b, or if he had wished further details of the charge he could have demanded a bill of particulars under Rule 715a or moved for discovery and inspection under Rule 728. See *Putnam v. State, supra,* 545-546. He did none of these things but merely contended in furtherance of his motion for judgment of acquittal, that the first count of the indictment failed to charge an offense. We think that the first count of the indictment sufficiently stated an offense so as to permit the sustaining of a conviction under it and therefore that the trial court did not err in refusing to grant the motion for judgment of acquittal.

The appellant filed a motion to suppress and exclude evidence as seized by an "unlawful and illegal search." The motion was denied at a hearing before the trial on the merits. Objections at the trial to the admission of the evidence seized were overruled and a motion at the conclusion of the testimony to ex-

---

**5.** A charge that the accused "feloniously committed burglary" as authorized by Code, Art. 27, § 31, is sufficient because it incorporates the definition of both common law burglary and statutory burglary, each of which includes a breaking and entering of a dwelling house in the nighttime.

clude the evidence was denied. The appellant claims error in the rulings on the grounds that the arrest of the appellant was illegal, the search incident thereto unreasonable, and the seizure of the evidence unlawful.

## THE ARREST

Evidence adduced at the hearing on the motion showed that Sarah Jean Moskel, while in her apartment on the second floor at 9 Deer Park Drive, Gaithersburg, Maryland on 15 February 1967, heard a noise in the next apartment. She knew the resident of that apartment was working and looking out the window did not see his car. She went into the hall and again heard noises in the adjoining apartment. She looked out the window and saw two men—"one was carrying rifles and the other man was carrying something covered with a sheet." The appellant was one of the men. The men were both wearing gloves although it was an unusually warm day. She saw the men put the articles in the back of a station wagon. They then re-entered the building and went to the third floor. The men carried a television set from the building and put it in the "green Falcon station wagon," which "had other things in it." She had resided in the apartment house for four and a half years, knew that the two men did not reside there and had not seen their car before. She called the police. An officer came to her apartment and she related the facts to him. She "went around to different apartments" and "saw that they were broken into" and told the officer about them.

Corporal Ralph Cooley of the Montgomery County Police received a radio call in his cruiser about 2:30 P.M. on 15 February to go to 9 Deer Park Drive. He did not "remember the exact wording of the call. Something to the effect that two men were carrying property from the apartment building, placing it in a car to the rear of the building." The only description of the men given that he could recall was that they were "two white males." The description of the car was that it was "a green or blue, light colored green or blue Falcon station wagon." Upon arriving at the apartment building he saw "a '63 Falcon, light blue in color, bearing Maryland tags parked in the rear of No. 9 Deer Park Drive. It was occupied by two white males, one under the steering wheel and one on the op-

posite side in the front seat. I pulled in front of the vehicle. As I was getting out of the police cruiser, the operator, the one under the steering wheel, got out of the car and met me near the front of my car and near the front of his car. At this point I asked him for some identification, which he produced." He told them they could not leave. He asked the appellant if that was his property he was moving. The appellant said it belonged to his girl friend whose name was "Keeney", that she lived on the second floor and that he thought she was at work at GEICO but he did not know the phone number and was not sure she was there at the time. The officer could see that the station wagon contained a console model television lying face down. "The back seat was turned flat to make the entire back of the station wagon on a flat cargo space. It had several cases which appeared to be gun cases on the right side of the vehicle inside, and several pillow cases with articles in them * * *. The whole floor space was filled with what appeared to be pillow cases with articles in them, bedspreads, weapons in cases, other small numerous items from houses such as radios, et cetera." There was no other vehicle "near this description" given on the lookout and the two men were the only ones to the rear of the building.

Officer Michael J. Keller of the Montgomery County Police received a radio call in his police cruiser on 15 February "to respond to No. 9 Deer Park Drive * * * The call came out stating that there was persons going into apartments, knocking on doors and seeing if the persons that lived in the apartments were at home. If not they were going into the apartments and taking things out." The call included a license tag number of the car involved—EA 9792. He also received information on the radio while going to the scene that the car was registered in the name of the appellant and that the appellant was a known housebreaker. When he arrived at the scene Cooley was present. The appellant, identified by his drivers permit, was seated on the driver's side in a Falcon station wagon bearing the license tag given in the lookout. Keller gave the information he had received to Cooley who went into the building and "checked the apartment." Cooley ascertained that an individual by the name of Keeney lived on the second floor of the apartment house, but the individual was a male. He talked

to Mrs. Moskel and went to the third floor and observed several apartment doors ajar. He placed the appellant and his companion under arrest.

The appellant urges that he was arrested by Corporal Cooley when that officer first arrived on the scene and that at that time Cooley did not have probable cause for the arrest nor is the record sufficient to show that any member of the police team had, at that time, probable cause for his arrest. But we need not decide the question raised by this argument for we think, assuming that an arrest was made as the appellant claims and that it was illegal, that there was a subsequent arrest of the appellant which was legal. When Cooley came out of the apartment building and placed the appellant under arrest he was in receipt of the information received on the radio by Keller, the information given him by Mrs. Moskel and had observed the broken apartments and the articles in the station wagon. We have no difficulty in determining that he then had probable cause to believe that the felony of daytime housebreaking, Code, Art. 27, § 30(b) or larceny, Code, Art. 27, § 340 had been committed and that the appellant was the one who committed it. *Ervin v. State,* 4 Md. App. 42, 45. Even if the initial arrest was deemed to be illegal, this did not vitiate the subsequent legal arrest in the circumstances here. *Hewitt v. State,* 242 Md. 111. And that this legal arrest may have been made for "possible housebreaking", a crime which does not exist, is immaterial. "We think untenable the proposition that an arrest based on probable cause becomes unconstitutional because the crime is inaccurately described by an officer * * *." *Simms v. State,* 4 Md. App. 160, 167.

## THE SEARCH

After the arrest of the appellant, which we have determined to be legal, other police officers arrived on the scene. One of them drove the appellant's car to the police station. It was searched upon its arrival, about 3:15 P.M., and an inventory made of the contents. The car was turned over to a Mrs. Reagan several days later. By the testimony of the officers on the subject, the car was taken to the station to search it for evidence of crime and to inventory its contents pursuant to an al-

leged regulation of the police department pertaining to impounded cars. Although a regulation was discussed, it was not otherwise identified or proffered. The lower court, after finding that the arrest was legal, held that the search of the car was not incident to the arrest as "too far remote in time and place." However, it found that the search was reasonable under *St. Clair v. State,* 1 Md. App. 605. We think the instant case is clearly distinguishable from *St. Clair,* where at the time the inventory was initiated, the police had no reason to suspect that the goods in the car did not belong to the arrestee and the sole purpose in removing the goods from the car was to inventory them in order to protect the presumed owner and the police from charge of loss. We recognized in our holding "* * * the difficulty likely to be encountered in distinguishing a *bona fide* inventory from a mere subterfuge to search." In the circumstances of the instant case, we cannot say that the search of the appellant's car was a *bona fide* inventory and therefore reasonable under the holding in *St. Clair.* But we do think that the search was lawful as incident to the legal arrest. It is established that the arrest being legal, the police could, as an incident thereto, search the vehicle in which the appellant was seated at the time of his arrest. *Barton v. State,* 2 Md. App. 52; *Gaudio v. State,* 1 Md. App. 455. "And while ordinarily a search of a motor vehicle can be incident to an arrest only if it is substantially contemporaneous therewith and is confined to the immediate vicinity of the arrest, *Preston v. United States,* 376 U. S. 364, *Wilson v. State,* 2 Md. App. 210, in some circumstances a search may be deemed incident to an arrest, although not conducted at the scene of the arrest, when it is made with reasonable promptness at a police station to which the vehicle was towed immediately following the arrest." *Anthony v. State,* 3 Md. App. 129, 133. For the ultimate test governing the validity of a search and seizure without a warrant is whether under the facts and circumstances present, the search was reasonable under the Fourth Amendment. At the time of the legal arrest of the appellant the police had probable cause to believe that a felony had been committed, that the appellant committed it and that the goods in his car, in plain view, were the fruits of the crime. To say, under these circumstances,

that a search of the car on the street at the time of the arrest would be lawful but that the search would be rendered unlawful merely because the car was first taken to the police station would serve no purpose other than to substantiate Mr. Bumble's opinion of the law. We hold—on the facts and circumstances of this case—that the search of the appellant's car without a warrant, undertaken approximately one hour after his legal arrest and immediately upon its arrival at the police station, for the purpose of discovering evidence connected with a crime of which the appellant had been arrested, was valid on the ground that it was made incident to and substantially contemporaneous with his arrest. And we find further support for our holding in the language of the Supreme Court in *Dyke v. Taylor Implement Mfg. Co., Inc.*, 391 U. S. 216, 88 Sup. Ct. 1472, 20 L. Ed. 2d 538 (1968) :

> "Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office. * * * The cases so holding, have, however, always insisted that the officers conducting the search have 'reasonable or probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search."

The record before us is clear that the officers who assisted in the search had reasonable or probable cause to believe that evidence would be found in the appellant's car.

### THE ADMISSIBILITY OF THE EVIDENCE

The crimes for which the appellant was tried and convicted and which are the subject of this appeal did not arise from the events on 15 February at 9 Deer Park Drive but from the breaking of the dwelling of Gaston Paul Jennett and Sheila Jennett at 6419 Livingston Road, Apartment 102, Oxon Hill, Maryland. Commander Jennett testified that he and his wife left their apartment on 9 February 1967 and returned about 5:30 P.M. on 14 February. When they left the apartment the door was locked and "it had a chain on it on the inside." When they returned and unlocked the door, he observed that the chain "was cut in the middle. It was attached to the door on one

side and the door frame on the other." The door had a lock in the handle and there was a separate lock on the chain. He went in the bedroom and saw that his jewelry box had the lid open. Two pistols were missing from drawers in a night stand and a portable television set was missing. He called the police. He subsequently ascertained that goods of the total value of over $450 had been taken. Among the articles taken were a cap and ball pistol, serial No. 123258, valued at $100-$125, a Walther pistol, model 5, .25 caliber, serial No. 620234, valued at $56, a clip for the Walther and a man's topaz ring, valued at $25. At the trial these articles were identified by Jennett as belonging to him. The two pistols and the clip were found in the appellant's car when it was searched and admitted in evidence over objection. A pair of bolt cutters were also found in the car. A special agent of the F. B. I., qualified as an expert in tool mark identification, testified that it was his opinion, based on examination with a comparison microscope, that the chain on Jennett's door had been cut with the bolt cutters found in the car. The cutters were admitted in evidence over objection.

The appellant's contention that the lower court erred in admitting the pistols, clip and cutters in evidence is based on his allegation that the warrantless search by which they were seized was unreasonable as not incident to a legal arrest. We have found, even assuming that the appellant was first illegally arrested, that his subsequent arrest was legal and that the search of the car, made after the legal arrest, was reasonable as incident thereto. Therefore the challenged articles were properly admissible, *Hewitt v. State, supra,* page 114-115, and the contention fails.

Thomas B. Bever,[6] who was with the appellant during the events at 9 Deer Park Drive on 15 February and arrested with the appellant, was taken to the police station. The topaz ring identified by Jennett as taken from his apartment was found on Bever's person. It was admitted in evidence over objection. The appellant claims error, alleging that the ring was not in

---

**6.** Bever was also charged in the indictment under which the appellant was convicted.

the possession of the appellant and that it was not shown that the appellant took it or ever had custody of it. He cites *Matthews v. State,* 237 Md. 384. But the finding in *Matthews* was that "[g]uilt inferred *only* from the fact of unexplained possession of recently stolen goods * * * ordinarily cannot be imputed to a companion of the possessor *without other supporting evidence;* even though both may be observed committing a similar crime at a different time or place." (emphasis added) The Court held that motions for judgment of acquittal on the grounds that there was no legally sufficient evidence to sustain the convictions should have been granted. Unlike *Matthews,* the question here is not whether the fact alone of the possession of the ring by Bever would be sufficient to sustain a conviction of the appellant, but whether the ring was properly admissible against the appellant. The general rule is that the trial court is vested with sound discretion relating to the reception or rejection of evidence. *Koprivich v. State,* 1 Md. App. 147. And only a probability that the fruits of a crime are connected with an accused is required to be shown in order to render them admissible in evidence. *Broadway v. State,* 3 Md. App. 164; *St. Clair v. State, supra.* The appellant and Bever were together in a car containing both other fruits of the crime charged and an instrument of that crime and we cannot say that the stolen ring was not relevant evidence. See *Wharton, Criminal Evidence,* 12th Ed., Vol. II, p. 204. The fact that it was found in the possession of the companion of the appellant goes to its weight and not to its admissibility. We find no abuse of discretion by the trial court in admitting the ring in evidence and no error in regard thereto requiring reversal of the judgments.

Having found that there was a legal arrest and a lawful search and that the challenged evidence was properly admissible, there was no error in the rulings of the lower court denying the motions to suppress and exclude the evidence and overruling the objections to the evidence. As the further contention that the court erred in denying the motions for judgment of acquittal is predicated on error in denying the motions to suppress, the contention fails.

## THE INSTRUCTIONS TO THE JURY

The instructions to the jury included the following:

> "With respect to the line of testimony, which you will recall for yourselves, which shows that items which were in the Jennett dwelling later showed up in a car which this defendant was operating and apparently, to all intents and purposes, in control of, if you find this set of facts occurred you may then from those facts consider whether or not you will draw the presumption that this defendant was, in fact, the person who broke and entered and stole this property.
>
> The law, you are advised, is that you may infer from the fact that the Defendant was in possession or control of recently stolen property, you may infer that he was the thief or one of the thieves. This applies to the property which was found in the station wagon under his control as well as to the property that was found on his companion who was seated next to him in the station wagon. Whether you draw this inference or not is your decision to make. The Court advises you that in its opinion the law permits you to draw this inference from the possession or immediate proximity of the defendant to this property which was recently stolen."

Objection was made to that part of instruction pertaining to the ring, defense counsel urging that the court should instruct that the ring could raise an inference of Bever's guilt but not the guilt of the appellant. As there was other supporting evidence in the instant case—the unexplained possession by the appellant of other recently stolen goods, the pistols and clip, and an instrument of the crime, the bolt cutters—the ring was clearly within the exception stated in *Matthews v. State, supra*. We think the challenged instruction was proper.

In his brief the appellant urges that the use of the word "presumption" rather than "inference" by the lower court in connection with the possession of the recently stolen goods was

improper. But the objection made by defense counsel at the trial was not to this point. He said:

> "In addition, counsel would also need an exception to the Court's advisory instruction on the possession of recently stolen property. In fairness to the Court I think the Court put everything in the affirmative but neglected to give the alternative, which would be the negative. The Court indicated that an inference may be drawn, and emphasized that inference, but did not emphasize, although it did mention, I believe, that it was not necessary that the inference be followed. But I think in giving this type of instruction the Court should with equal vigor indicate that there is one avenue open to the jury to accept, and by the same alternative there is another equal avenue where they may reject this inference depending upon the facts of the case."

As the particular portion of the instructions now challenged was not "distinctly objected to" below on the grounds now urged, the alleged error of which the appellant complains may not be assigned as a right of error. Md. Rules, 756f and g. Nor do we find plain error material to the rights of the accused. Although the lower court used the word "presumption" once, it used "infer" or "inference" four times immediately thereafter. We note that in his objection counsel considered the instruction as permitting an "inference" to be drawn and so referred to the instructions four times.

*Judgments affirmed; costs to be paid by the appellant.*