KLAUS WALTER BRAUN AND ALBERT LIZER
*v.* STATE OF MARYLAND

[No. 335, September Term, 1967.]

96

Decided September 16, 1968.

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Philip D. Quint* and *Howard L. Muhl* for appellants.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, John C. Hancock, State's Attorney for Charles County,* and *Louis P. Jenkins, Assistant State's Attorney for Charles County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The appellants were found guilty at a court trial in the Circuit Court for Charles County of grand larceny and storehouse breaking with intent to steal goods of the value of $100 and upwards. Braun was sentenced to a term of 4 years and Lizer to a term of 5 years. The determination of the contentions raised on appeal from the judgments turn on the legality of the arrest of the appellants.

On 24 July 1967 Mr. and Mrs. Francis Chappelear were the owners and operators of a restaurant at Benedict, Maryland. They had secured the premises, which contained goods valued at approximately $6000, the evening of 23 July and retired for the night in their home a short distance from the restaurant. There was an "intercom system" connecting the restaurant and their bedroom and about 3:00 A.M. they heard noises over the intercom. Mrs. Chappelear looked out the window and saw "people moving around in there." She telephoned the State Police and stayed on the line, conveying what she observed, until the State Police arrived on the scene. Her husband stayed

by the intercom to hear what was going on. Trooper Thomas
H. Ireland of the Maryland State Police was the first to arrive
at the scene about 8 minutes from the time of Mrs. Chappelear's
call. He obtained information from Mr. and Mrs. Chappelear
which he put on the radio about 12 minutes after he arrived.
As a result of these activities three reports were put on the
police radio network by the State Police. The first was that
there was a breaking and entering in progress at Chappelear's
Restaurant in Benedict, Maryland; subjects were in the build-
ing, "two maybe more" and the police were asked to respond.
The second contained information that Mrs. Chappelear had
seen two subjects and one of them "was a slim subject wear-
ing a white shirt." The third call stated that the subjects had
left the building. Water is on three sides of the Benedict area
and there is only one road therefrom, leading to State route
231 which it meets at a T-intersection about a mile or a mile
and a half from Chappelear's. Deputy Sheriff David Fuller
and Deputy Sheriff James F. Gartland of the Charles County
Sheriff's Department, on duty in their marked car, at Waldorf
about 10 miles from the Benedict road received the first call
on the radio about 3:30 A.M. Responding to the call they pro-
ceeded on route 231 toward Benedict. En route they received
the second and third calls. They saw no other vehicles while
on route 231. About one or two minutes after they received
the third call they saw an automobile on the road from Bene-
dict travelling at a high rate of speed toward the intersection
of route 231.[1] It sped through the stop sign at the intersection,
making a right turn toward the Calvert County Bridge. The
officers pursued the car and pulled along side of it, warning
it to stop by means of their red flashing light. As they over-
took the car Gartland observed that two of the occupants were
wearing white shirts, Braun was driving, a woman was in the
front seat and Lizer was in the back seat. Braun and Lizer
were wearing the white tee shirts. The officers arrested the oc-

1. Trooper Ireland, the first officer to arrive at Chappelear's
restaurant was asked if he passed any cars on the way in. He re-
plied, "No, sir. I did not. However, there are numerous side roads
in Benedict that this vehicle (the car containing the appellants)
could have been parked in or on."

cupants at gun point and handcuffed the men. Shortly thereafter State Police arrived on the scene and the car was searched. Keys turned over to the police by Braun would not open the trunk so the rear seat was removed and an aperture into the trunk was revealed. In the truck the police saw a box containing money and a shotgun. Trooper Albert Hoffman who was at Chappelear's was called to bring Mr. Chappelear to the car. Mr. Chappelear identified the objects as stolen from his restaurant—the shotgun as belonging to him and the box as one which came from one of his slot machines. Subsequently the trunk was opened and the shotgun and box, which contained coins, were seized. The shotgun, the box and money, a screwdriver found between the grill and radiator of the car and another screwdriver found in the car were admitted in evidence over objection.

The appellants urge on appeal, as they did at the trial, that the arrest was illegal in that it was made without a warrant and on no probable cause for the officers to believe that a felony had been committed and that the appellants had committed it. Therefore, they claim, the search and seizure was unreasonable and the challenged articles were inadmissible as evidence.[2] In finding that the arrest was legal and overruling the objection to the admission of the evidence the court said:

> "I conclude that there were ample grounds to substantiate a reasonable belief on the part of the two deputy sheriffs that a felony had been committed. And I like-

2. There was testimony that permission to search the car was given by Lizer, the owner of the car, in the presence of Braun who raised no objection. Trooper Henry Roeckel, whose testimony was corroborated by other officers, said that he asked Lizer if they could search the car and Lizer said that they could search it "but don't tear it up." The lower court found no need to determine whether or not the search was permissive, nor do we. Nor do we think, in the circumstances, that the search of the trunk could be justified on the grounds that the arrest was legal in that the misdemeanor of failing to stop at a stop sign was committed in the presence of the arresting officers. In any event, the testimony of the officers makes clear that the arrest was made on the ground that they had information that a felony had been committed and believed that the appellants committed it.

wise conclude that there was ample testimony to believe, on the grounds of probable cause, that these defendants, or the occupants of the car, may well be involved in it.

The reason I conclude it is this: Not so much on the white shirt, though that's a factor. I don't put the same stress on it counsel do, based on the interrogation about it. I find that there is prima facie evidence from which I can conclude that Mr. and Mrs. Chappelear became aware of the fact that their place was being burglarized at the time the burglary was being committed. They observed with their own senses that someone unauthorized was in the place. They got the police on the phone and told them that, while they made this observation.

It seems clear that during this conversation with the Waldorf Police Barracks, while it was being carried on, unknown to the people in the establishment, that they were committing a crime, and so they were continuing their work while she was giving a description. It is equally apparent that they kept her on the phone so that she could continue to describe what she was observing, so that they could put this information out, not only to the State Police, but apparently to the Sheriff's Office in some cooperative maneuver that they had.

I find from the evidence that the two Deputy Sheriffs were in the vicinity of Waldorf, which is some 12 or 15 miles away; proceeded at a high rate of speed in the direction of Benedict. And it is clear that for the first several miles they did meet two or three cars, but then no other vehicular traffic on the road. Had they stopped one of those first three, why I would say there was no probable cause, because the information they had was at that time the crime was in the process of being committed, and it would have been impossible for those first two or three cars to have reached 15 miles away within that time.

But as they got nearer and nearer to Benedict, it was

natural that they would view each vehicle that they passed with greater suspicion. And, as it is apparent, when they got near the only exit from Benedict a car was coming out.

Now, it's perfectly natural that their attention would be focused there. Had that car gotten out and met even a mile away, it would have given me somewhat more trouble. But just as they got to the intersection they received the information that the crime had been committed, and the persons were then in the process of leaving or escaping. Now, with that knowledge, and that having happened just minutes before, a question of maybe less than five minutes, what do they see? At three o'clock in the morning, a vehicle at a high rate of speed, whether it's 60, 70 or 80 miles an hour, is of relatively minor consequence; but at a high rate of speed, come out of the only exit from Benedict, at a time of the day when there is no one moving in the area.

They traveled some ten or 12 miles without seeing a vehicle, in a sparsely settled section of the County. * * * But the significant fact is that this car, at a high rate of speed, not stopping at a stop sign, comes into the "T" intersection from the only method of egress from the Village of Benedict, where the crime was perpetrated, and with the knowledge that they had just left minutes before.

Now, without further description, I would say there is probable cause right there, to stop that car to determine that question, without any description as to whether it was a white shirt or blue shirt or yellow shirt, or anything else.

As a matter of fact, I think it only fair to state that it would be very questionable that they saw what color shirt he had at that stage. Maybe when he drove up beside them and turned on the red light he could see. But in their determination to stop that car, it's very questionable that they could see a white shirt at that time. And he obviously had determined to stop

that car, because he had to pass the turn in order to get the car to where it was between there and the bridge, a short distance away.

It would seem to me that there would be probable cause, since this was at three o'clock in the morning, or four o'clock in the morning, at a time when there was just literally no one stirring in the neighborhood, to stop any car that they met on the only road leading to Benedict.

I think there is great significance in the fact, or I feel there is in these three factors: Number one, the time of the hour when there is no one else moving; number two, that they had left the scene of the crime within minutes, by the information that they had; and number three is they were coming out of the only entrance, at a high rate of speed, disobeying the mandate to stop because of a stop sign. * * *

It seems to me when you know someone committed a crime, in a question of a few minutes is coming out of the only exit from that establishment, that that in itself is probable cause, when you know that a felony has been committed. It is almost like knowing that a felony has been committed and seeing somebody run from the place where the robbery was committed, or store; you are justified in stopping the person when you know that a felony has been committed. You have reasonable grounds to believe that a felony has been committed, and you see somebody coming away from it, at a fast rate of speed, whether on foot or in a vehicle, that in itself creates probable cause to stop the person and conduct your arrest.

I conclude that there is probable cause, was probable cause for the arrest."

We agree. The general rule is that a warrantless arrest by a police officer is valid where he has probable cause to believe at the time of the arrest that a felony has been committed and that the person arrested has committed it. *Duckett v. State,* 3 Md. App. 563, 572. Information broadcast over a police radio and received by a member of the police team may constitute prob-

able cause for an arrest. *Robinson v. State,* 5 Md. App. 68, and cases therein cited in note 7. Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a felony has been or is being committed. *Boone v. State,* 2 Md. App. 479; *Michaels v. State,* 2 Md. App. 424; *Gaudio and Bucci v. State,* 1 Md. App. 455. The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion. *Simms v. State,* 4 Md. App. 160, 167, quoting *Edwardsen v. State,* 243 Md. 131, 136. We think the evidence here meets the test of these rules.

As the arrest of the appellants was legal, the search of the car incident thereto was reasonable and the evidence seized thereby was properly admissible. *Watts v. State,* 3 Md. App. 454; *Lewis v. State,* 2 Md. App. 678; *Barton v. State,* 2 Md. App. 52; *Dixon v. State,* 1 Md. App. 623.

> *Judgments affirmed; appellant Braun to pay one-half of the costs.*