# THOMAS DALE TIERNEY *v.* STATE OF MARYLAND

[No. 201, September Term, 1968.]

*Decided May 21, 1969.*

· The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, AND THOMPSON, JJ.

*Harry D. Barnes* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Julius Jodlbauer, State's Attorney for Cecil County,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, Thomas Dale Tierney, was tried in the Circuit Court for Cecil County by a jury, Judge Kenneth Mackey presiding, upon a ten-count indictment. He was found guilty on the first count (storehouse breaking with intent to steal goods of a value of $100 or upwards); the fifth count (larceny of goods to the value of $100 or upwards); and the ninth count (larceny of a motor vehicle in violation of Article 27, § 348, Maryland Code (1967 Repl. Vol.)); and was sentenced to a term of twelve years on each count, to run concurrently.

On appeal he raises three contentions:

1. That the court erred in finding that there was sufficient probable cause for a legal arrest and subsequent search.
2. That the testimony of the arresting officer

      pertaining to a statement by a co-defendant
      was improperly admitted into evidence.
3. That there was insufficient evidence to war-
    rant the appellant's conviction.

The evidence adduced from the record discloses that in the early morning hours of August 23, 1967, the Cecilton Farm and Home Supply Company store in Cecilton, Maryland, was broken and entered and various tool boxes, tools, drills, a key making machine, a power saw and other articles valued at approximately $950. were stolen. At or about the same time a 1960 orange and white Chevrolet pickup truck valued at $450. was stolen from John Lewis Nafzinger, trading as the L. J. C. Farm Store in Cecilton.

I

Appellant's first contention is that the arrest was illegal as it was made without sufficient probable cause, and, therefore, the subsequent search of the vehicle in which he was a passenger, made at the State Police Barracks, was unreasonable and the property removed therefrom should not have been received in evidence.

At approximately 3:25 a.m. on August 23, 1967, Thomas C. Davis, from an upstairs window over his grocery store, observed an orange and white Chevrolet pickup truck going down a side street leading behind the Cecilton Farm and Home Supply Company store. His suspicion being aroused, since he knew that no pickup trucks would go back in that area at that time of the morning, he immediately called Cecilton fire headquarters and requested that the State Police be contacted. Shortly thereafter he observed a black sedan automobile, which he then believed to be a Cadillac, come out of the side street leading behind the Cecilton Farm and Home Supply Company store on to State Route 82 and head towards the intersection with State Route 213. It stopped briefly just beyond his store, but he was unable to see how many people were in it. He heard a door slam and as it started up again he saw the same orange and white Chevrolet pickup truck emerge from the same street as

the black sedan and proceed towards the intersection of Route 82 with Route 213. As soon as the pickup truck had passed, Davis crossed the street and saw the pickup truck turn north on Route 213. The pickup truck was occupied by only one person, the driver, and Davis recognized it as the pickup truck owned by the L. J. C. Farm Store. He testified that a period of five minutes elapsed from the time he first saw the pickup truck go behind the Cecilton Farm and Home Supply Company store until it reappeared. He returned to his store and again called fire headquarters and requested that they forward this information to the State Police.

The information given by Davis over the telephone to Cecilton fire headquarters was relayed by fire headquarters to the North East Barracks of the State Police where it was received by Corporal Shumaker who was then in charge. The information received by Corporal Shumaker over the phone was that a possible breaking and entry had taken place at the Cecilton Farm and Home Supply Company store in Cecilton, Maryland, and that two suspicious vehicles, a black sedan, possibly a Cadillac, followed by an orange and white Chevrolet pickup truck, were heading north on Route 213 towards Elkton, Maryland. Shumaker, by police radio, immediately called Trooper Kennedy, who was then stationed in Elkton, gave him the aforesaid information, and ordered him to proceed south on Route 213 towards Cecilton. Corporal Shumaker himself then left the North East Barracks and also proceeded towards Cecilton. Shortly thereafter he received word from Trooper Kennedy that he had spotted the two vehicles proceeding north towards Elkton and that he had made a U-turn and fallen in behind the pickup truck which was following the black sedan. Corporal Shumaker, who was then on Route 213, stopped the police cruiser and waited and shortly thereafter the three vehicles came into view. First he observed a 1960 black Buick sedan, followed at a distance of about five car lengths by an orange and white Chevrolet pickup truck, which was in turn followed

by Trooper Kennedy's vehicle. Corporal Shumaker made
a U-turn and fell in behind Trooper Kennedy. It was then
agreed between the two State troopers to stop the two
vehicles. The black Buick sedan, which was the lead ve-
hicle, was stopped by Corporal Shumaker and the orange
and white Chevrolet pickup truck was stopped by Trooper
Kennedy. The black Buick sedan was occupied by the
driver, Lloyd Nelson Hoffman, and appellant, Thomas
Dale Tierney. When asked for identification, Hoffman pro-
duced his operator's license and registration card.
Tierney produced an operator's license issued in the
name of Robert Howard Tierney, whom he later admitted
to be his brother. Both Hoffman and Tierney gave Balti-
more addresses. Jimmy Lee Sizemore, the driver and sole
occupant of the Chevrolet pickup truck, produced his
operator's license but was unable to produce the registra-
tion card for the pickup truck. He was also from Balti-
more. The 1960 Chevrolet pickup truck was an open body
truck with 18 inch sides. In the rear, in plain view, the
officers observed a number of tool boxes containing tools,
some with price tags still on them, drills, a power saw,
a key cutting machine and numerous other articles. In
view of the information previously received as to a pos-
sible breaking and larceny at the Cecilton Farm and
Home Supply Company store, the occupants of the two
vehicles were detained by Trooper Kennedy while Corpo-
ral Shumaker drove to Cecilton for further information.
On arrival he discovered that the Cecilton Farm and
Home Supply Company store had been broken and en-
tered and tool boxes, tools, drills and other equipment
had been taken by the thieves. He also checked the L.
J. C. Store, which had not been entered, but its pickup
truck was missing. He was assisted in his investigation
by Warren Jay Gerhardt and W. C. Sorrelle, two of three
partners in the Cecilton Farm and Home Supply Com-
pany. Meanwhile Trooper Ordway had arrived at the spot
where the three men were being detained by Trooper
Kennedy, and Hoffman and appellant Tierney were placed
in Trooper Ordway's cruiser while Sizemore was placed
in Trooper Kennedy's cruiser.

Just prior to the return of Corporal Shumaker, Trooper Kennedy heard over the police radio that the Cecilton Farm and Home Supply Company store had been broken and entered and certain equipment had been taken and also that the 1960 orange and white Chevrolet pickup truck had been stolen from the L. J. C. Farm Store. He immediately ordered Trooper Ordway to place Hoffman and appellant Tierney under arrest while he placed Sizemore under arrest. Shortly thereafter Corporal Shumaker, together with Gerhardt and Sorrelle, returned to the spot where the occupants of the two vehicles were being held by Troopers Kennedy and Ordway. Upon arrival Gerhardt identified the tool boxes, tools, cutting machine, power saw, drills and other articles as the property of the Cecilton Farm and Home Supply Company. Among the articles which had been stolen and which were found in the back of the pickup truck was his own personal blue tool box and tools. After they had been placed under arrest, Sizemore, Hoffman and appellant Tierney, together with the 1960 black sedan and the 1960 orange and white pickup truck, were taken to the North East Barracks of the Maryland State Police. The three occupants of the two vehicles were held in custody, and the stolen articles were removed from the Chevrolet pickup truck and stored in the Barracks. While appellant was being processed, a Bay Island seafood slip was found in his wallet, on which were several names and telephone numbers. One of the names was Jimmy Sizemore with a telephone number opposite his name. Sizemore was the operator of the truck. Appellant admitted at that time that the operator's license in his possession was his brother's and that his correct name was Thomas Dale Tierney.

The general rule is that an arrest without a warrant by a police officer is valid where he has probable cause to believe at the time of the arrest that a felony had been committed and that the person arrested had committed it. *Braun and Lizer v. State*, 5 Md. App. 95, 101, 245 A. 2d 416; *Robinson v. State*, 4 Md. App. 515, 522,

243 A. 2d 879; *Duckett v. State,* 3 Md. App. 563, 572, 240 A. 2d 332.

Here the State troopers who stopped the two vehicles had received reliable information which lead them to believe that a possible breaking and larceny had taken place at the Cecilton Farm and Home Supply Company store in Cecilton, Maryland, and that the two vehicles reported headed north on Route 213 were involved. It would appear from the evidence that at the time the State troopers stopped the two vehicles they did not intend to place the occupants under arrest and their action in stopping the two vehicles amounted only to an accosting to determine the identity of the occupants of the two vehicles. *Michaels v. State,* 2 Md. App. 424, 428, 234 A. 2d 772; *David v. State,* 1 Md. App. 666, 232 A. 2d 553. When Sizemore was unable to produce the registration card for the pickup truck and the troopers observed the tool boxes and tools, some with price tags still on them, drills and other articles, most of which appeared to be new, their suspicions became confirmed and they then determined to hold the occupants until they could make a further investigation and obtain further information. Before Corporal Shumaker's return from Cecilton, Trooper Kennedy received information over the police radio that a breaking and larceny had occurred at the Cecilton Farm and Home Supply Company store and various equipment of the same nature as that found in the rear of the pickup truck had been stolen and that the orange and white pickup truck owned by the L. J. C. Farm Store had been stolen. Hoffman, Sizemore and appellant Tierney were then placed under arrest.

Probable cause exists where the facts and circumstances within the knowledge of the arresting officers, and of which they had reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that a felony has been committed. *Braun and Lizer, supra,* p. 102. Information broadcast over a police radio, and received by a member of the

police team, may constitute probable cause. *Robinson v. State, supra,* p. 524. The rule of probable cause is a reasonable ground for belief of guilt, requiring less evidence than would justify conviction but more evidence than would arouse mere suspicion. *Simms v. State,* 4 Md. App. 160, 167, 242 A. 2d 185. Assuming that appellant, along with Hoffman and Sizemore, were arrested when first stopped by Corporal Shumaker and Trooper Kennedy, and that at that time the troopers did not have probable cause for the arrest and that the arrest was illegal, there was a subsequent arrest made by the troopers which was legal. This was the arrest made by the State troopers when Trooper Kennedy received word over the police radio of the breaking and larceny that had taken place at the Cecilton Farm and Home Supply Company store and the larceny of the orange and white Chevrolet pickup truck, all of which was confirmed upon the arrival at the scene of Corporal Shumaker, accompanied by Gerhardt and Sorrelle, who positively identified the articles in the rear of the pickup truck as those stolen from the Cecilton Farm and Home Supply Company store. We therefore find the arrest of the appellant to be legal.

Since the arrest was legal, the subsequent search of the motor vehicle in which appellant was a passenger and the seizure therefrom of the gloves and jacket, made at the State Police Barracks some three hours after the arrest, was legal. *Reagan v. State,* 4 Md. App. 590, 600, 244 A. 2d 623; *Barton v. State,* 2 Md. App. 52, 59, 233 A. 2d 330; *Gaudio v. State,* 1 Md. App. 455, 230 A. 2d 700. As a general rule a search of a motor vehicle can be incident to an arrest only if it is substantially contemporaneous therewith and is confined to the immediate vicinity of the arrest. *Preston v. United States,* 376 U. S. 364; *Wilson v. State,* 2 Md. App. 210, 214, 233 A. 2d 817. However, in some circumstances, a search may be deemed incident to an arrest, although not conducted at the scene of the arrest, when it is made with reasonable promptness at the police station to which the vehicle was taken

immediately following the arrest. *Anthony v. State,* 3 Md. App. 129, 133, 238 A. 2d 130. At the time of the arrest of the appellant the State troopers had probable cause to believe that a felony had been committed and that appellant had participated in the commission of it and that the articles in the back of the pickup truck in plain view were fruits of the crime. As stated in *Reagan v. State, supra,* p. 601-602, "To say, under these circumstances, that a search of the car on the street at the time of the arrest would be lawful but that the search would be rendered unlawful merely because the car was first taken to the police station would serve no purpose other than to substantiate Mr. Bumble's opinion of the law." Here the two vehicles were taken to the State Police Barracks immediately after the arrest but it was necessary to wait approximately three hours until the identification expert's arrival to process the car in which appellant had been riding as a passenger. Under the circumstances we find the search to be reasonable. *Reagan v. State, supra; Anthony v. State, supra.*

## II

Appellant next contends that the extrajudicial admission of Sizemore, a co-defendant, made out of his presence was inadmissible and should not have been admitted into evidence because such statement (a) was a violation of the hearsay rule, and (b) denied the appellant his fundamental right to be confronted by witnesses against him.

The statement objected to was brought out by the appellant in his cross-examination of Trooper Kennedy. On cross-examination appellant attempted to show, by Trooper Kennedy, that no one had identified the appellant or his companion Hoffman as being at the scene of the crime. The record discloses the following:

Q. "Has anyone positively identified to you either this gentleman [appellant] or the man driving that black Buick as being at the scene of that crime? Anyone that ever saw them?

A. "Yes, sir.
Q. "They positively identified these men as men they saw at the scene of the crime?
A. "Not saw, but was there, and this was—
Q. "They say they were there?
A. "Mr. Sizemore, yes, sir."

Appellant objected and moved that the answer be stricken. The motion was denied. Had the answer been brought out on direct examination, it would have been inadmissible as hearsay. Here it was brought out by appellant on cross-examination in an effort to establish that neither appellant nor Hoffman were ever identified at the scene of the crime. We find the objection without merit. The answer was responsive to his question and appellant cannot now complain. The ruling of the lower court was correct.

### III

Appellant's third and final contention is that there was no legally sufficient evidence to warrant his conviction of the three crimes with which he was charged and of which he was convicted by the jury.

At the close of the State's case the appellant filed a motion for judgment of acquittal, which was overruled by the court. Appellant offered no evidence in his behalf. The case having been tried before a jury, this Court does not weigh the evidence presented to the jury, but only determines its sufficiency to take a particular issue, or the entire case, to the jury. To set aside the jury's verdict we must be able to say there was no legally sufficient evidence from which the jury could have found him guilty beyond a reasonable doubt. *Veny v. State,* 251 Md. 182, 201, 246 A. 2d 568, 579; *Williams v. State,* 5 Md. App. 450, 247 A. 2d 731; *Sizemore v. State,* 5 Md. App. 507, 517, 248 A. 2d 417.

The burden of proof was on the State to prove the appellant guilty beyond a reasonable doubt of being a principal involved in the breaking and entry of the Cecilton Farm and Home Supply Company store, the larceny of

certain tools and equipment therefrom of a value of $100. or upwards, and the larceny of the pickup truck owned by John Lewis Nafzinger, trading as L. J. C. Farm Store.

From the evidence the jury could find that appellant was one of the occupants of the black sedan automobile seen to emerge from a side street leading behind the Cecilton Farm and Home Supply Company store at approximately 3:30 a.m. on August 23, 1967. They could further find that within minutes thereafter an orange and white pickup truck emerged from the same street leading behind the hardware store. This truck had been observed entering the same street some five minutes previously. Both the sedan and the pickup truck were seen traveling in the same direction on State Route 82 towards the intersection with State Route 213 where the pickup truck, the rear vehicle, was observed to turn north towards Elkton, Maryland. When the two vehicles were stopped by the Maryland State Police on Route 213 they were traveling together, with the pickup truck about five car lengths behind the black sedan. The black Buick sedan was occupied by the driver, Lloyd Nelson Hoffman, and the appellant, Thomas Dale Tierney; the pickup truck following was occupied by Jimmy Keith Sizemore. In the rear of the pickup truck were found all of the articles stolen from the Cecilton Farm and Home Supply Company store, which was later found to have been broken and entered. The three occupants of the two vehicles were from Baltimore and not local residents. The pickup truck was found to have been stolen from John Lewis Nafzinger, the owner of the L. J. C. Farm Store. The original keys to the pickup truck were locked in the company safe, and the keys in the truck were found to be duplicate General Motors keys used to unlock vehicles. Urban A. Wright, an identification expert for the Maryland State Police, arrived at the North East Barracks some three hours after the arrest. He made an immediate search of the Buick in which appellant had been a passenger. In the glove compartment he found a pair of cotton work gloves and from the rear seat removed a brown jacket. He also found a pouch with keys in the

trunk. From the key making machine, found in the rear of the pickup truck and identified as one of the stolen articles, he removed two vials of metal shavings. He delivered these two vials of metal filings, together with the coat and gloves, to Special Agent Thomas E. Elrod at the Federal Bureau of Investigation in Washington, D. C. Agent Elrod, a specialist in the field of spectroscopy, which consists of analyzing materials through the use of instruments, removed certain metal filings from the jacket and gloves and compared these with two vials of metal filings removed from the key making machine found in the pickup truck Sizemore was driving. From his examination he concluded that the particles of metal filings removed from the jacket and gloves could have come from the same source as the metal filings in the two vials delivered to him by Mr. Wright and which he obtained from the key making machine, one of the stolen articles. While appellant was being processed at the barracks following his arrest, a Bay Island seafood slip was found in his wallet, on which were several names and telephone numbers. One of the names was Jimmy Sizemore, with a telephone number opposite his name. Sizemore was the operator of the pickup truck. Appellant admitted at this time that the operator's license in his possession was his brother's and his correct name was Thomas Dale Tierney. Moreover, the admission of Sizemore that appellant was present at the breaking and entry was admitted in evidence, as was the seafood slip removed from his wallet with Sizemore's name and telephone number on the back. Presence at the scene of the crime is an important factor in determining the guilt or innocence of the accused. *Pettis and Faulds v. State,* 2 Md. App. 651, 236 A. 2d 429.

From the facts and circumstances in this case there was sufficient evidence from which the jury could find that the appellant, together with others, was in possession of recently stolen goods, giving rise to the inference that he was the thief. *St. Clair v. State,* 1 Md. App. 605, 232 A. 2d 565. There is no requirement of actual

possession as long as he retains a measure of control or dominion over the goods. *Gamble v. State,* 2 Md. App. 271, 234 A. 2d 158. From the evidence in this case we find that the court properly submitted the issues to the jury for its determination. In doing so, the court instructed the jury as follows:

"If you believe that this defendant was acting in concert with either or both of the other two persons, and that this defendant and either or both of the other persons were present at the scene of the alleged crime, then the wrongdoing of any one of them would be chargeable to all of them. Thus if you believe that the defendant Tierney was present at the time and participated in any extent with the others, he would be equally guilty with the others, or the other one if you decide only one took part."

From the evidence adduced at the trial the jury could find that appellant, together with Hoffman and Sizemore, participated in the breaking of the Cecilton Farm and Home Supply Company store, the larceny of the articles therefrom, and the larceny of the truck owned by Mr. Nafzinger, trading as the L. J. C. Farm Store.

The indictment was drawn in ten counts and the appellant was found guilty under the first, fifth and ninth counts. The first count charged that appellant "unlawfully did break the storehouse of Warren Jay Gerhardt, t/a Cecilton Farm and Home Supply Company." Actually the store was owned by a partnership consisting of Ralph A. Gerhardt, Warren Jay Gerhardt and W. C. Sorrelle, trading as Cecilton Farm and Home Supply Company.

Since the ownership of the building is not an essential element of the crime, it need not be proved exactly as alleged. Here the proof was sufficient to show that the storehouse broken into by appellant and his companions did not belong to them, that they had no right to enter it without the permission of the lawful occupant or owner, and was sufficient to protect the appellant against a

subsequent prosecution for the same offense, which is all that is required. *Hackley v. State,* 237 Md. 566, 569, 207 A. 2d 475; *Melia and Shelhorse v. State,* 5 Md. App. 354, 364-65, 247 A. 2d 554; *Sparkman v. State,* 3 Md. App. 527, 531-32, 240 A. 2d 328.

The fifth count under which appellant was convicted alleged ownership of the articles stolen in Warren Jay Gerhardt. The proof revealed that they were the property of the partnership, except for one blue tool box and tools which were the personal property of Warren Jay Gerhardt. At the trial Gerhardt testified that the market value of the blue tool box and tools therein which were owned by him was between $150—$200. We find this to be sufficient to sustain the larceny count.

Appellant was also convicted under the ninth count of the theft of the 1960 orange and white pickup truck, the property of John Lewis Nafzinger, trading as the L. J. C. Farm Store. Mr. Nafzinger testified at the trial that he was the owner of the truck, which he had previously identified at the North East State Police Barracks on the morning of the theft and which carried the fruits of the larceny. We find the evidence to be sufficient to prove that appellant participated in the theft.

*Judgments affirmed.*