# WILLIAM HALLY FRAZIER v. STATE OF MARYLAND

[No. 99, September Term, 1967.]

472

*Decided April 1, 1968.*

The cause was argued before MURPHY, C. J., and MORTON, ORTH, and THOMPSON, JJ.

*Robert F. Freeze* for appellant.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph Howard, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

William Hally Frazier, the appellant, complains of a conviction for murder in the first degree in a jury trial before Judge Meyer M. Cardin in the Criminal Court of Baltimore. He lists a number of grounds for appeal which will be enumerated and discussed hereinafter.

There was evidence from which the jury could have found the following facts.

On July 11, 1965, Frazier walked into a Crown Service Station on West Franklin Street in Baltimore and killed the deceased in the presence of two eyewitnesses; both of whom testified substantially as follows: That Frazier walked into the service station, said something to the deceased then pulled a revolver from under his shirt, shot the deceased once; that the deceased grabbed Frazier who broke loose and shot the deceased once more; that Frazier then started out the door but turned and shot the deceased for the third time. The medical examiner confirmed that the deceased died from three bullet wounds. One of the eyewitnesses informed a police officer of what had oc-

curred, and the officer immediately arrested Frazier. The witness told a second police officer that he had observed Frazier walking towards a truck, later determined to be owned by Frazier, parked on a street near the station. The officer upon locating the truck, found the window down and the glove compartment door open. Inside the glove compartment, he saw a revolver, which was photographed in position and then seized. A firearms and ballistics expert testified that the bullets in the deceased's body had been fired from the pistol which Frazier later admitted belonged to him. He claimed, however, that there were no other people in the station and that he shot the deceased only after he had been hit on the head with a bottle. Obviously the jury disbelieved his claim of self-defense.

I

Frazier's first contention is that under *Preston v. United States,* 376 U. S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777 the seizure of the gun was unreasonable and not incident to a lawful arrest. That case does not seem to control the present one. In *Preston* the vehicle was removed to a police station and searched much later. Although, here, Frazier was arrested a few blocks away from the location of the vehicle, the seizure occurred almost simultaneously and was not preceded by an unauthorized search. The officer simply picked up what was in plain view near the scene of the crime. We recently considered a seizure under similar circumstances in the case of *Wilson v. State,* 2 Md. App. 210, 214, 233 A. 2d 817 wherein we said:

> "It is clear, however, that the warrantless seizure of the shotgun offered into evidence was not incident to the arrest and cannot be sustained as incidental thereto, even though the arrest was lawful, for 'a search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest. *Agnello v. United States,* 269 U. S. 20.' See also *Stoner v. California,* 376 U. S. 483; *Preston v. United States,* 376 U. S. 364. Here, the arrest was not in the immediate vicinity of the car and was effected nearly an hour after the search and seizure.

"We are of the opinion, nevertheless, that the seizure of the shotgun without a warrant was, under the circumstances, lawful. It is apparent that the seizure in this instance does not fit neatly into any of the several categories or exceptions which have been carved out of the Fourth Amendment prohibition against searches and seizures without a warrant. However, as this Court said in *St. Clair v. State,* 1 Md. App. 605, at page 617:

'* * * the relevant test is whether the search was reasonable under all of the circumstances, for it is only unreasonable searches that are prohibited by the Fourth Amendment. *Carroll v. United States,* 267 U. S. 132 (1925); *Stewart v. State,* 1 Md. App. 309 (1967). And that which is reasonable cannot be determined by any fixed formula, *United States v. Rabinowitz, supra,* nor can it be stated in rigid and absolute terms, *Harris v. United States,* 331 U. S. 145 (1947). In short, whether a search and seizure is reasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case.' "

We find the seizure here, under the circumstances of this case, entirely reasonable.

## II

Frazier, next, contends that there was a defective link in the chain of custody of the weapon after it was seized by the police. The objection to the evidence was based specifically on the grounds of unreasonable search and seizure and not upon a defective link in the chain of custody; therefore under Maryland Rule 1085 and Maryland Rule 522 the matter is not properly preserved for appeal, *Wilt v. Wilt,* 242 Md. 129, 218 A. 2d 180. In *Avey v. State,* 1 Md. App. 178, 187, 228 A. 2d 614 this court quoted the Court of Appeals in the case of *Breeding v. State,* 220 Md. 193, 199, 151 A. 2d 743, 747 as follows:

"The question is one of reasonable probability that no tampering occurred."

It is apparent from this record that no tampering occurred with the weapon, and that there was no error in its admission even if the matter were properly before us.

## III

Frazier also contests the fact that evidence of probable cause was taken in the presence of the jury. Not only was there no objection on this ground but also counsel below specifically agreed to the taking of the testimony before the jury. Under Maryland Rule 1085 there is nothing before this court for review. It should be noted that this case was tried prior to September 1, 1967, the effective date of Maryland Rule 734 d 2 requiring that such testimony be taken out of the presence of the jury.

## IV

Frazier objects to the failure of the trial court to make rulings on the objections disclosed in the record as follows:

"QUESTION: How long did it take you to pull the trigger three times?

MR. FREEZE: Objection. The Witness didn't say how many times he pulled it.

THE WITNESS: I don't know how many times I pull it. I didn't say I pulled three times.

BY MR. HOWARD: How many times did you pull it?

MR. FREEZE: Objection.

THE WITNESS: I do not know.

BY MR. HOWARD: Did you pull it more than one?

MR. FREEZE: Objection.

WITNESS: I don't know.

MR. HOWARD: You don't know how many times you pulled the trigger?

MR. FREEZE: Objection.

WITNESS: No, I do not.

MR. FREEZE: He has answered that * * *."

While it is the duty of the trial judge to rule on each objection, it is apparent to us that on the facts of this case there

was no prejudice to the appellant's case from failure to make the rulings here. Under Maryland Rule 522 this court cannot review matters of evidence which were not presented to and ruled on by the trial court, *Fowler v. Benton,* 229 Md. 571, 185 A. 2d 344. If the appellant felt that the answers were prejudicial, he should have made a motion to strike them. In all fairness to the trial judge it should be stated, however, that it is apparent from reading the record that on cross-examination Frazier was answering the questions too quickly for the court to make rulings prior to his answers.

## V

Frazier further complains that he was questioned on cross-examination concerning admissions or statements he had given to the police after the arrest when voluntariness of the same had not been established. The specific complaint is shown in the following questioning:

"A. Was I taken to the Police Station? Yes, I was.

Q. And you were interrogated there? You were questioned there?

MR. FREEZE: I would object to the question, your Honor.

THE COURT: Answer the question. Were you?

THE WITNESS: A couple of words — not too much.

MR. FREEZE: I would object as to any questioning about that, at this stage.

THE COURT: The answer was, yes, a couple of words; not too much.

BY MR. HOWARD: Q. What you told the police, was it true?

MR. FREEZE: Objection.

THE COURT: Overruled.

BY MR. HOWARD: Q. Answer the question, Mr. Frazier. Did you tell the police the truth on July 11, 1965?

A. Yes, I did."

\* \* \*

"QUESTION: Did you tell the police at Western

Station that you weren't even there when the shots were fired?

MR. FREEZE: Objection.

THE COURT: Overruled. You may answer the question. Did you or didn't you?

THE WITNESS: I didn't tell the police anything like that.

BY MR. HOWARD: Didn't tell them that. Did you tell the police that you didn't do the shooting at all?

MR. FREEZE: Objection.

THE COURT: Overruled. Did you or didn't you?

BY MR. HOWARD: Do you understand the question, Mr. Frazier?

ANSWER: Ask it again, will you please?

MR. HOWARD: Would you read it back?

(Whereupon, the question referred to above was read back by the reporter.)

THE WITNESS: I don't know exactly what I told the police.

* * *

QUESTION: Did you tell the police about that?

MR. FREEZE: Objection.

THE COURT: Overruled.

QUESTION: Did you tell the police about that?

THE COURT: If you remember. Did you or didn't you?

QUESTION: Do you understand the question, Mr. Frazier?

ANSWER: (no response)

QUESTION: Do you understand the question, Mr. Frazier?

ANSWER: No, I didn't tell the police.

* * *

QUESTION: Did they ask you about blood on your shirt, Mr. Frazier?

MR. FREEZE: Objection.

THE COURT: Overruled.

WITNESS: (no response)"

Without proof of voluntariness such use of admissions or confessions resulting from in-custody interrogations would seem to be error under *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. The current trial, however, took place prior to June 13, 1966, the effective date of the *Miranda* decision, *Johnson v. New Jersey,* 384 U. S. 719, 86 S. Ct. 1772, 16 L. Ed. 2d 882, *Meadows v. Warden,* 243 Md. 710, 222 A. 2d 249.

It appears to us, beyond a reasonable doubt, on the facts of this case, that the effects of the cross-examination on the outcome of the trial was so minimal as to be completely harmless.

## VI

The next question Frazier presents is that he was placed in double jeopardy by reason of the fact that he was reindicted after he elected to avoid a prior indictment under *Schowgurow v. State,* 240 Md. 121, 213 A. 2d 475. This court has many times answered this contention contrary to the appellant's position. One of the later cases is *West v. State,* 3 Md. App. 123.

## VII

Frazier also contends that there was insufficient evidence to support his conviction. The aforegoing summary of the testimony of the two eyewitnesses to the murder amply demonstrates that this contention is frivolous, *Price v. State,* 3 Md. App. 155.

## VIII

Frazier complains of the failure to grant his three motions for a mistrial. The first motion was based upon some statement of the State's Attorney in the opening argument. Since there is nothing in the record concerning what remarks were made, there is nothing before this court to review. Maryland Rule 1085. The second motion is based upon the State's Attorney offering evidence concerning probable cause before the jury. Inasmuch as this procedure was specifically approved by defense counsel, he cannot now complain. Maryland Rule 1085.

The third motion was made at the conclusion of the State's final argument and embraced four points concerning the argument:

"a. Criticized defense counsel for making objections and going to the Bench to argue same."

We have read the argument as presented in the record and find no basis for this ground as the argument contained no such criticism.

"b. Stated 'Reasonable doubt . . . is the first admission of the defense that they have given up all hope in their case, and they are trying to find some weakness in mine.' "

This seems to us to be a legitimate argument; the appellant cites no authority to the contrary.

"c. Asserted his personal belief as to the guilt of the accused."

To support this ground he quotes *Toomer v. State,* 112 Md., 285, 292, 76 A. 118:

"It is unquestionably wrong for the State's Attorney in his argument to the jury to refer to any matter not testified to by the witnesses or disclosed by the evidence in the case, and it is his duty to confine his remarks to the facts in the case, [he did not add] but if every remark made by counsel in the heat of argument, not strictly applicable to the evidence offered, is to be held sufficient ground for reversing a judgment, few convictions would stand."

On this specific point the Court of Appeals in *Riggins v. State,* 125 Md. 165, 174, 93 A. 437 said, quoting *People v. Weber,* 149 Cal. 325, 334, 86 P. 671, 677:

"But, upon the other hand, such prosecuting officer has the undisputable right to urge that the evidence convinces his mind of the accused's guilt. Indeed, it would be mere stultification if it were contended that the prosecuting attorney could argue to the jury that the evidence should convince their minds although it did not convince his. A prosecuting officer therefore has the right to state his views as to what the evidence shows."

480

See also *Shoemaker v. State,* 228 Md. 462, 474, 180 A. 2d 682, 688.

"d. Commented on the failure of the defendant to produce evidence."

This objection was based on the State's Attorney's comments on the failure of the accused to produce any testimony corroborating his own that he had received injuries at the hands of the deceased. On the facts of this case when two eyewitnesses had testified that there were no such injuries it seems to us that this was a fair argument. Frazier cites no authority to the contrary and we know of none.

*Judgment affirmed.*