# WILLIAM WHITE *v.* STATE OF MARYLAND

[No. 73, September Term, 1974.]

*Decided October 18, 1974.*

The cause was argued before MORTON, DAVIDSON and LOWE, JJ.

*Weldon Leroy Maddox, Assigned Public Defender,* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Joseph Wase, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

After presiding over the convictions of William H. White following a jury trial in the Criminal Court of Baltimore, Judge Paul A. Dorf sentenced appellant White to a total of one hundred and fifty-five years to be served consecutive to a life sentence. The crimes for which Mr. White was convicted were first degree murder, assault with intent to murder, four counts of robbery with a deadly weapon and four handgun violations. The convictions arose out of a single incident when appellant and three other persons robbed the Chevrolet Inn and its patrons. One patron was killed and another wounded.

The appellant was first tried from May 2, 1973 to May 10, 1973 jointly with a co-defendant who was convicted by a jury. The jury could arrive at no decision as to appellant and the case against him was declared a mistrial. This appeal reviews the retrial commenced on Nov. 8, 1973. Several of the fourteen issues raised by appellant result from the interrelation of the two trials.

## Unresolved Motion

Appellant contends that prejudicial error was committed by the failure of the court below to rule on the speedy trial issue he raised prior to retrial. Among a multitude of issues contained in a single Motion to Dismiss the Indictments,

appellant asserted (in subparagraph c of paragraph 10) that his "constitutional and fundamental rights" had been violated by his having "been denied a speedy trial." The overall Motion to Dismiss was heard by Judge Anselm Sodaro. During the hearing Judge Sodaro asked,

> "Mr. Maddox, may I ask whether there has been filed in these proceedings a motion for a speedy trial, or is that motion for a speedy trial included in this motion to dismiss the indictments? "

Neither appellant nor his counsel was able to recall whether such motion had been filed since the first trial or if so in what form.

Judge Sodaro then explained:

> "THE COURT: The reason I am inquiring is if there has been a motion for speedy trial filed there will have to be an ajudication [sic] on that motion, the determination of the motion can be decided and then the case can go on to trial, or it can be held sub curia until after the determination of the trial, all of which is subject to appeal in the event of a guilty verdict. It seems to me inasmuch as I am not going to hear this case, but Judge Watts will on November the 7th, that the motion for a speedy trial ought to be argued and determined by the judge presiding at the trial of the case, and if there is to be a motion for a speedy trial, I think it ought to be filed on a separate document and not be included in the motion to dismiss these indictments, because various grounds have been assigned for the dismissal of these indictments, one of which is this defendant has not been afforded a speedy trial, and it seems to me that I should not make any ajudication [sic] of that issue in these proceedings but I would have to leave it to Judge Watts at the time of the trial of the case.
>
> "I would also suggest it would be a better practice and make a more orderly procedure, if the

defendant still insists on claiminghe [sic] has been denied his right to a speedy trial, that he ought to file that motion, that speedy trial motion in a separate document so there can be an ajudication [sic] of that motion. If this defendant is then acquitted all well and good; if this defendant is found guilty I think the record ought to be made complete that some one judge, either I or Judge Watts, had made a determination of the motion for speedy trial. Do we understand each other now?

"MR. MADDOX: Yes."

When the case was called for trial the judge presiding was not Judge Watts as anticipated but rather the Honorable Paul A. Dorf. Judge Dorf promptly asked the parties:

"What are the motions before me if any at this time? "

Although appellant raised several preliminary questions to be decided by Judge Dorf, at no time did appellant mention the undecided subparagraph 10 c of the Motion to Dismiss, disposed of in all other respects by Judge Sodaro. Time and again during the disposition of preliminary matters prior to selecting a jury Judge Dorf would inquire "What motions are you pressing now" or some similar invitation to bring to his attention any matter pending that should be disposed of prior to trial. Finally, immediately before concluding the preliminary hearing Judge Dorf once more asked:

"Gentlemen are there any other foreseeable problems we can solve at this time before we go to trial? "

The appellant brought out "The only other thing . . ." which he asked to be decided and which had no relation to the speedy trial complaint. Proceedings were then concluded and the case continued until the following day when witnesses could be obtained to dispose of a motion to suppress an in-court identification prior to selecting a jury.

Although appellant cites no authority for his contention

that failure to rule upon a pending motion may be prejudicial error we have no question that such right is an important element of Maryland law. *Brice v. State*, 254 Md. 655. We note, however, that this right, as most other rights, carries with it a commensurate responsibility. The motion to be decided must be brought to the attention of the trial court. Appellant may not take advantage of an obscurely situate, undecided motion and stand mute in the face of repeated requests by the judge for all pending motions to be decided. This becomes inexcusable in light of the former hearing judge having specifically admonished appellant to place the question squarely before the judge who would try the case. In both *Alston v. State*, 11 Md. App. 624 and *Saunders v. State*, 8 Md. App. 143, while acknowledging the trial court's responsibility to rule on all pending motions, we have added the qualification ". . . if they are brought to his attention prior to the conclusion of the trial." *Saunders v. State, supra,* at 146; *see also Frazier v. State*, 3 Md. App. 470. If the question is not of such importance to appellant that he remembers to request an answer, the court cannot be charged with screening previously decided motions to discern an unanswered sentence obscured by a plethora of unrelated issues. Nor can we permit such distended motions to be set as a trap for an unwary judge. Appellant obviously waived his right to a ruling on the motion by repeatedly failing to present the question to Judge Dorf.

### Remarks Indicative of Prejudice

When the new trial commenced, appellant subpoenaed his brother who was in custody, and received permission for him to sit in the courtroom during the trial. Appellant complains of the trial judge's inability to impartially preside which he infers from his remarks during an episode involving appellant and his brother. To place the remarks in context we review the factual setting revealed by the record.

At the previous trial witnesses identifying appellant testified that he sported a mustache and a bush hair style. At the time of the second trial he had altered his appearance by removing the mustache and closely cropping his hair.

During the hearing on the motion to suppress in-court identification, prior to the second trial, appellant wore a distinctive business suit with a floral design. The State's witness was asked to identify the perpetrator of the crime. She identified appellant who was wearing the suit. Appellant's brother had grown a mustache and "bush" hair style while in custody prior to the second trial. He appeared in court dressed in prison denims and flanked by guards. According to the trial judge the brother's facial and physical appearance were quite similar to the accused. The judge refused to allow the brother (who, though subpoenaed, never testified) to be seated at the trial table next to the now clean shaven, closely cropped defendant (dressed as indicated in the eye-catching suit). No objection was raised to that refusal.

During the trial, appellant changed his garb and his prisoner-brother donned the appellant's floral suit.

The State's identification witness had, of course, been sequestered since the suppression hearing to await her turn to testify and identify appellant in the presence of the jury. Thus, when she returned, she would have seen the look-alike brother seated in the courtroom in appellant's floral suit. This brotherly exchange of appearance and dress was obviously intended to mislead the identifying witnesses, and the trial judge properly refused to permit the solemn process of identification to become a charade of look-alikes.

Appellant does not protest the prohibition of the proposed practice either. His complaint is that the remarks of the trial judge, although not in the presence of the jury, were so prejudicial as to indicate that he "could not assure the Appellant a fair and impartial trial." We quote the record where it begins after an overnight recess:

> "THE COURT: I really don't appreciate the fact that the defendant has changed suits in the middle of the trial. Now the person who is being put in the audience, his brother, is wearing the suit he wore at the trial yesterday.

"MR. WASE: The State would enter an objection to it, Your Honor.

"THE COURT: The State does not have to object. I object strenuously and I don't know what is happening here. I'm not talking to Mr. Maddox. It's probably the first time you have seen it.

"MR. MADDOX: The first time I have seen the change I'll say.

"THE COURT: It appears to the Court that there are things that are taking place in this case which are not exactly fair. I don't really appreciate it. I'm advising all parties, Mr. White, take off that jacket, just sit without a jacket today. Take the jacket back. I don't care what you do with it. You're not going to have the defendant wear the jacket one day and the brother wear the same jacket the next day. With that type of jacket, white jacket with a floral arrangement, the minute the jacket walks in, I'm not a connoisseur of men's clothing, but it stands out like a sore thumb. I was going to tell him you're sitting in the wrong place.

"MR. WASE: If your Honor please of course the man still has the pants on.

"THE COURT: Well I can't take his pants off."

In light of the circumstances we consider the judge's remarks commendably restrained and anything but indicative of prejudice, unfairness or partiality. The granting or denial of a mistrial being discretionary, *Johnson v. State*, 18 Md. App. 571, 574-5, there is no evidence whatsoever of an abuse of discretion. To the contrary, we find appellant's attempted deception repugnant to the truth-finding process and deserving of the reproval it received. In addition, we reiterate that the reproval occurred when the jury was not present.

### Defendant's Prior Testimony

Prior to concluding the State's case the assistant state's attorney offered a transcript of the appellant's testimony

given at the first trial. Appellant's objection asserted that admission of such testimony would violate his right not to incriminate himself guaranteed by the fifth amendment to the Constitution of the United States. The court overruled the objection and permitted the testimony to be introduced.

The testimony was essentially exculpatory. Appellant denied having been near the scene on the night in question or of having been acquainted with any of the known participants. The latter assertion had especial significance in the original trial since Abraham Goode, a co-defendant, was convicted although the jury was unable to agree as to White. Appellant specifically disavowed knowing Goode prior to their respective arrests. Nothing more of substance was included in his testimony from the first trial.

Had the issue concluded there, the question would give us but little concern. In *Harrison v. United States,* 392 U. S. 219, 222, the Supreme Court settled the question of a defendant's alleged compulsory self-incrimination through introduction of his testimony at a former trial:

> "In this case we need not and do not question the general evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings. A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him." [1]

---

**1.** The admission of testimony was declined, however, because the record revealed defendant had been induced by advice of counsel to take the stand in the first trial to offset the contents of three illegally obtained confessions wrongfully admitted. Harrison held that the testimony could not be used at the second trial only because it resulted from the "fruit of the poisonous tree" *viz.,* the illegal conference.

## Impeachment of Defendant's Testimony
## From Prior Trial

However, the State then followed the introduction of appellant's testimony from the prior trial with witnesses who testified to facts contradicting portions of the exculpatory testimony. These witnesses included Mrs. Phyllis Wiggins, a school teacher and cum laude college graduate, who lived with an associate of White. She placed White in the company of the co-defendant whom he had denied knowing.

John Bernard Morris was then called by the State to testify behind a shield of sweeping immunity from prosecution for an unrelated crime, as well as "if during the course of that testimony any of the statements he makes incriminates him in any other offense, he will not be prosecuted by the State."

After testifying that his occupation "until recently ... was a stick up artist" and that he generally "dealt in criminal activity," Morris' direct testimony did little more than contradict appellant's testimony from the previous trial, particularly regarding persons he denied knowing. Additionally, Morris described appellant's physical appearance during the time period when the crime was perpetrated.

Appellant argues that "The State cannot impeach its own witnesses or evidence. The State offered the testimony of the Appellant and it is bound by its exculpatory nature." Such does not appear to be the law of Maryland.

In *Henze v. State*, 154 Md. 332 the record reveals that appellant was tried three times before a verdict could be reached. His entire testimony from one of the previous aborted trials for the same offense was introduced by the State during its case-in-chief. The State then contradicted Henze on portions of his testimony by producing two other witnesses. In a single paragraph the Court of Appeals through Judge Pattison disposed of exceptions to the contradictory testimony:

"The twenty-first, twenty-second, twenty-third,

and twenty-fourth exceptions were to the rulings of the court in allowing the State witnesses Johnson and Dee to contradict Henze in certain statements made by him in his evidence. The State did not make the defendant its own witness by repeating to the jury his own story, as told upon a former trial, and the fact that some portions of the statement so read were thereafter contradicted by the State's witnesses cannot be regarded as a violation of the rule which forbids a party to impeach its own witnesses. *Mackmaster v. State, supra.* If the evidence was admissible, as we have held it to be, it would seem right and proper that the State should have been allowed to contradict any exculpatory statements made by the defendant in his evidence; consequently we do not see any error committed by the court in its rulings upon these exceptions."

Notwithstanding the brevity of that isolated holding, it does not seem unreasonable to allow the State to contradict a properly admitted statement by defendant, whether made judicially or extrajudicially. The State can hardly be said to "vouch" for its witness when the witness is the defendant. On the other hand, we do not find the issue as "patently frivolous" as the State suggests. However, since the objections here were restricted to the issues of self-incrimination and the contradiction of defendant's testimony once introduced, neither of which was of substance in the light of *Harrison* and *Henze*, we expressly decline to rule on the relevance of the initial proffer. The appellant did not raise that issue and it is not before us.

### Foundation Necessary to Contradict

Appellant then called Titus Stokes, one of a number of persons who had been in jail with the immunized witness, Morris, and who appellant contended would impeach his testimony. Appellant asked Stokes if he had ever had any discussion with Morris. He replied, "I didn't have a discussion but I overheard a conversation." Objections were

then sustained to four successive questions, all of which were directed toward eliciting evidence of prior statements made by Morris which allegedly were inconsistent with his testimony. The court sustained the objections primarily on the ground of hearsay.[2] Thwarted by this obstacle appellant declined the court's invitation to rephrase the questions. He further refused to call the additional witnesses he had proposed for the same purpose.

The trial judge properly rejected such impeachment testimony, although perhaps assigning the wrong reason. The record clearly indicates that appellant made no attempt to lay a foundation for such impeachment by first asking the witness, Morris, whether he had indeed made the statement to which Stokes alluded at the time, place and to the person alleged. Only upon a denial by the witness that he made the statement or his assertion that he did not remember making it, may appellant proceed to set forth contradictory testimony. *Sanders v. State*, 1 Md. App. 630, 640-641.

In addition, the prejudice now discerned from the preclusion of the testimony was, at the time, conceded by appellant to be minimal. His counsel gratuitously offered the following statement for the record:

> "I want to be perfectly honest with the Court to indicate what happened in this case. I did go down to the lockup. When I arrived down there Mr. White, he called all those witnesses over. I can say this as a matter of fact. I took the names of six persons, Edward Thomas, Gregory Leonard, Titus Stokes, John Stanley Lomax, Roosevelt Jenkins and Calvert Williams. I talked with them. *But I want to be perfectly honest with my client and to the Court from my conversation I fail to see how they will offer anything in the way of any defense for Mr. White.* I say this in open court after having talked to them. I know Mr. White may not like what I am

---

2. Relevancy and leading the witness were other reasons given for some questions.

saying but I have been honest with theCourt. [sic] *I
doubt very much whether anything they could say
concerning John Morris is even admissible in
court.*" (Emphasis added).

We accept counsel's opinion that the witnesses would not
have offered "anything in the way of any defense for Mr.
White." More significantly, without the proper foundation
having been laid we concur that their testimony concerning
John Morris was not admissible.

### Instructions as to Other Offenses

As the trial drew to a close, the testimony of the
immunized witness, John Bernard Morris, again caused
appellant concern, this time in regard to the court's
instructions to the jury.

On direct examination Morris did nothing more than
contradict the testimony appellant had given at his prior
trial. With the exception of describing himself as a "stick-
up artist" who "dealt in criminal activity" his direct evi-
dence related only to appellant's associations and appear-
ance.

The testimony elicited by appellant on cross-examination,
however, was devastating. Responding to questions of
appellant's counsel, Morris stated that he had known
appellant for a year and a half, that he knew appellant had a
"stick up mob," and that together with appellant they dealt
in the sale of narcotics. He also described an association
"with Mr. White ... on an assassin mission. We took a
victim from an apartment to kill him."

As appellant was eliciting this testimony the court,
obviously concerned about its possible impact on the jury
interspersed its own objection. The appellant insisted upon
his right to "impeach" by so cross-examining. Upon
continuing he found a most willing witness, who recounted
without shame as many unrecorded offenses as he was able
to include under the unbelievably broad blanket of
immunity provided him by the State.

Obviously still concerned that the jury may give undue

and misplaced emphasis to this testimony, the court instructed:

> "that the fact the defendant may or may not have committed other crimes cannot be the basis to convict him of the present crime. This testimony may have bearing on motive or intent, but you are not to convict in the present case for things he may have done in other circumstances or other cases."

Appellant's complaint that the court injected parenthetically the phrase that such evidence "may have bearing on motive or intent" indicates no error or prejudice to us. It is an accurate if condensed tenet of law. *Avery v. State*, 15 Md. App. 520, 532-533. It is ironic that appellant elicited the very testimony that he now insists be disregarded and the use of which the court correctly restricted *sua sponte*.

### Remaining Issues Without Merit

Appellant raises a host of additional issues which merit less consideration, and are thus treated summarily. Their resolution requires only brief allusion to firmly established legal principles.

Three objections are made to the trial court's instructions or refusal to instruct. Appellant complains:

1.) that the judge declined to accept his proposed instructions on the jury's role as judge of law and fact, and the necessary absence of consent in a robbery. However, these areas were adequately covered by the language of the instructions given. When the meaning is implicit and clear, definitive terms are discretionary. *Johnson v. State*, 9 Md. App. 166;

2.) that during his explanation of the felony murder rule, the judge stated that if a murder "occurred during the occurrence of a robbery it was automatically first degree murder." Appellant contends this made it unnecessary for the jury to find "malice." We have said that under the felony-murder rule "the malice necessary to constitute

murder is implied from the fact that the accused was committing or attempting to commit a felony." *Lindsay v. State,* 8 Md. App. 100, 105, n. 7, quoting from Clark and Marshall, *Law of Crimes,* 6th Ed., § 10.07, p. 588. To place the phrase objected to in context would require the repetition of an eight page instruction on the law of murder given by the trial judge. We have reviewed the instruction and find no error;

3.) that the court refused to instruct the jury that the handgun violation in Md. Code, Art. 27, § 36B applied only to handguns which are operable. We find no such prerequisite in the statute. The declaration of policy of that section is to discourage "the carrying of handguns on the streets and public ways by persons inclined to use them in criminal activity." To require proof that a handgun used in the commission of a crime was operable, would make it impossible to convict unless the weapon itself were discovered and admitted into evidence. Even then only its ability to be discharged at the time the crime was committed would be conclusive.

We also note regarding jury instructions that the "court did instruct that it was necessary to find that Appellant did personally use a handgun." This court has recently held to the contrary. *Broadway v. State,* 23 Md. 68. Consequently, in addition to the reasons stated, when the jury found that appellant participated in the robbery during which a death ensued as a result of the handgun used, even by an associate, he was guilty of the commission of that felony by the "use" of a handgun. *Broadway, supra.* Although the instruction was incorrect it could in no way be detrimental to appellant.

Appellant argues that during a hearing on his Motion to Suppress In-Court Identification, the court recalled two of the witnesses who had been asked to identify him at his previous trial. In appellant's view, the trial court should have been limited to the transcript of the previous proceeding in arriving at its decision on the motion. We disagree. The judge, in his ultimate quest for truth in the identifications, properly supplemented the transcript

testimony by himself examining these witnesses. *cf. Sim-Kee Corporation v. Hewitt,* 13 Md. App. 296. If appellant were concerned that the witnesses' recollection of identity may thereby be refreshed, he could readily have withdrawn his motion.

Appellant protests that the officer should not have been permitted to testify, as part of the *res gestae,* that upon his arrival at the scene two witnesses stated that they had been robbed. The factual posture of the case is antithetical to appellant's contentions. The officer arrived two minutes after the robbery. The statements were immediately made in a situation frightening enough to produce a spontaneous or instinctive reaction. The circumstances showed a lack of forethought or deliberate design on the part of the declarants. *Reckard v. State,* 2 Md. App. 312, 316. Where a statement is made two minutes after a robbery where one man was killed, and one of the declarants wounded, a more appropriate setting for the finding of excited utterances is difficult to imagine.

Appellant next contends that he should have been granted a mistrial because of a proffer made by the state's attorney regarding transcript testimony of a witness from the prior trial which appellant planned to introduce. We find that the state's proffer that the testimony was previously soundly impeached and would again be impeached if introduced, was in substantial accord with the evidence. The proffer was thus evidently made in good faith and the trial court's denial of the motion for a mistrial was no abuse. *Johnson v. State,* 18 Md. App. 571.

The complaint of former jeopardy arising from the previous mistrial declared as the result of jury indecision following deliberations from 3:30 p.m. until well after midnight, where the foreman did not believe his fellow jurors could agree, lacks substance in the light of our holding in *Baker v. State,* 15 Md. App. 73, 89. Nothing indicates to us an abuse of discretion in the mistrial declaration.

The last three arguments raised may be treated even more

summarily than the preceding ones. Having failed to make the closing argument or the in-chambers discussions a part of the record, appellant has not preserved for review his objections to alleged court imposed restraints on the scope of his jury argument. Md. Rule 1085. The question of merger of the handgun violation with the armed robbery count has been treated by this court. *Bremer v. State,* 18 Md. App. 291, 344-345. And finally, the evidence, which included a victim's positive identification of appellant as a participant in the robberies during which a man was murdered by the use of a handgun, was ample to sustain his conviction. *Williams v. State,* 5 Md. App. 450.

*Judgments affirmed.*